UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JERRY WINGO, JR.,

  *Plaintiff*,      CIVIL ACTION NO. 1:17-cv-11275
             DISTRICT JUDGE THOMAS L. LUDINGTON
  *v*.         MAGISTRATE JUDGE PATRICIA T. MORRIS

EXPERIAN INFORMATION SOLUTIONS, INC.,
and NORTH CENTRAL AREA CREDIT UNION,

  *Defendants*.
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON
PLAINTIFF'S MOTION TO DISMISS COUNTERCOMPLAINT (Doc. 23)**

**I. RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that Plaintiff's Motion to Dismiss North Central Area Credit Union's Counter-Complaint, (Doc. 23), be **DENIED**.

**II. REPORT**

  **A. Introduction**

This matter began when Plaintiff Jerry Wingo, Jr. ("Plaintiff") filed a complaint against Defendants Experian Information Solutions, Inc. ("Experian"), Trans Union, LLC ("Trans Union"), Equifax Information Services, LLC ("Equifax"), and North Central Area Credit Union ("NCACU") in the 21st District Court, Wayne County, Michigan. (Doc. 1 at ID 1). Trans Union removed the case to federal court on April 24, 2017, submitting alongside its removal notice Plaintiff's complaint. (Doc. 1). In his original

1

complaint, Plaintiff alleges that he acquired "his credit files" in December 2016 "and noticed that NCACU was reporting its trade line ('Errant Trade Line') with a past due balance of $2,150.00 and a charged off status. This is false as the sled, which is the subject of the Errant Trade Line, was refinanced and the lien was later released by NCACU." (Doc. 1 at ID 12). He then sent letters to Experian and Trans Union disputing these trade lines and requesting they "be reported as paid and closed." (*Id.*). "Upon information and belief, Experian and Trans Union forwarded [his] consumer disputes to NCACU." (*Id.*).

He further avers that he received correspondence from Experience "stat[ing] that it was contacting the furnisher" on February 27, 2017, and the next day received Experian's investigation results "show[ing] that NCACU retained a balance of $1,397.00, a charged off status and a past due amount of $2,151.00 on the Errant Trade Line." (Doc. 1 at ID 13). On March 1, 2017, he "received Trans Union's investigation results which showed that NCACU retained the inaccurate 'charged off' status, a remark which stated, 'Unpaid balance, charged off, a balance of $1,397.00 and a past due amount of $2,151.00." (*Id.*). "As a direct and proximate cause of the Defendants' negligent and/or willful failure to comply with the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq., Plaintiff has suffered credit and emotional damages. Due to the Defendants' failure to correct the errors in his credit file, Plaintiff has been forced to refrain from applying for new credit or more favorable terms on existing credit lines. Plaintiff has also experienced undue stress and anxiety due to Defendants' failure to correct the errors in his credit file or

improve his financial situation by obtaining new or more favorable credit terms as a result of the Defendants' violations of the FCRA." (*Id.*).

On April 26, 2017, Plaintiff filed an amended complaint adding Equifax to the list of defendants, and alleging that he sent Experian, Trans Union *and Equifax* letters disputing the trade lines on his credit files. (Doc. 6 at 2). He adds, as well, that on April 10, 2017, he "obtained his Equifax credit report which showed that NCACU retained a balance of $1,397.00, a charged off status and a past due amount of $2,151.00 on the Errant Trade Line." (Doc. 6 at 3).

On May 5, 2017, NCACU filed a counter-complaint against Plaintiff, asserting subject-matter jurisdiction under 28 U.S.C. § 1367. (Doc. 15, para. 1). It alleged that "on December 11, 2013," Plaintiff "executed a Retail Installment Contract payable to the order of the Credit Union for the amount of $7,795.00, which contract loan was secured by a lien on a new 2014 Arctic Cat 500 Snow Pro Snowmobile," and that Plaintiff eventually "defaulted in making the required monthly loan payments . . . ." (Doc. 15, paras. 2-4). Thereafter, repossession became impossible because Plaintiff absconded and the snowmobile could not be located. (Doc. 15, para. 6). NCACU collected the snowmobile's fair market value from State National Insurance Company ("SNIC") and a rebate, collectively reducing the balance Plaintiff owed to $1,754.30. (Doc. 15, paras. 8-12). The counter-complaint thus sought a judgment against Plaintiff "in the amount of $1,754.30, plus interest, costs, and attorney fees as permitted by law." (Doc. 15, para. 13).

3

Plaintiff filed the instant Motion to Dismiss NCACU's Counter-Complaint under Federal Rule of Civil Procedure 12(b)(1) on May 26, 2017. (Doc. 23). NCACU filed a Response on June 14, 2017, (Doc. 26), and Plaintiff replied thereto on June 30, 2017, (Doc. 29).[1] Accordingly, this Motion is ready for report and recommendation.

**B.     Analysis and Conclusion**

As Plaintiff notes, "[w]here subject matter jurisdiction is challenged pursuant to Rule 12(b)(1), the plaintiff [or, as here, counter-claimant] has the burden of proving jurisdiction in order to survive the motion." *Moir v. Greater Cleveland Regional Transit Authority*, 895 F.2d 266, 269 (6th Cir. 1990). The present motion is not, however, a motion under 12(b)(1), which seeks to dismiss for "*lack* of subject matter jurisdiction." Fed. R. Civ. P. 12(b)(1) (emphasis added). Plaintiff does not actually doubt that exercising supplemental jurisdiction over NCACU's counter-complaint remains perfectly within this Court's power. (Doc. 23 at ID 139). *See generally* 28 U.S.C. § 1367(a)-(c). As such, the supplemental-jurisdiction statute, 28 U.S.C. § 1367, sets forth the proper mode of inquiry.

When a court properly retains original jurisdiction over a civil action, it "shall have supplemental jurisdiction over all other claims . . . so related to claims in the action within such original jurisdiction that they form a part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Courts "*may*," however, "decline to exercise supplemental jurisdiction" over a claim if: (1) it "raises a

---

[1] Experian and Trans Union also filed responses to Plaintiff's Motion, in which they expressly take "no position" as to whether this Court should exercise supplemental jurisdiction over NCACU's counter-complaint. (Docs. 27-28).

4

novel or complex issue of State law"; (2) it "substantially predominates over the claim or claims over which the district court has original jurisdiction"; (3) the court "has dismissed all claims over which it has original jurisdiction"; or (4) "in exceptional circumstances, there are other compelling reasons for declining jurisdiction." *Id.* § 1367(c)(1)-(4) (emphasis added). Though certainly "bounded by constitutional and prudential limits on the use of federal judicial power," district courts enjoy "broad discretion in deciding whether to exercise supplemental jurisdiction over state law claims." *Musson Theatrical, Inc. v. Federal Exp. Corp.*, 89 F.3d 1244, 1254 (6th Cir. 1996).

Plaintiff claims that "[r]econciling [his] FCRA claims with NCACU's breach of contract claim would prolong pretrial practice, complicate the trial, lengthen the jury instructions, confuse the jury, and may result in inconsistent verdicts and cause post-trial problems with respect to judgment interest and attorney fees." (Doc. 23 at ID 141). He cites *Lott v. Wolpoff & Abramson, L.L.P.*, No. 06-13249, 2006 WL 2123031, at *2 (E.D. Mich. July 27, 2006), as support. The plaintiff in *Lott* brought claims under the FCRA as well as the Michigan Collection Practices Act ("MCPA"), and the court decided to dismiss the state-law claims without prejudice because they "would substantially expand the scope of this case beyond that necessary and relevant to the federal law claim," and that the dual standards could impose excessive pretrial squabbling while needlessly complicating jury instructions. *Id.* at *2. According to Plaintiff, "the same issues exist [here] as those in *Lott*, but only more so." (Doc. 23 at ID 141).

5

I cannot agree. At the outset, I note that the *Lott* court did not elaborate much on the specific reasons for its ruling, and its concern with expanding the scope of the case, confusing the jury, or bloating pretrial practice seems misplaced on the facts of this case. As NCACU notes, it asserts a basic breach-of-contract claim involving the exact factual situation set forth in Plaintiff's original and amended complaints. Its fate is largely tethered to that of an affirmative defense NCACU asserts—that the credit line "was properly reported as charged off." (Doc. 26 at 10). Plaintiff's suggestion in his Reply that "the charged off status is not relevant to a breach of contract claim," (Doc. 29 at 2), is semantically appealing but plainly untrue, as failure to pay one's debt—*i.e.*, breaching a contract—may result in an accurate charge-off status—*i.e.*, an affirmative defense to Plaintiff's complaint. Unlike the task before the *Lott* court—which likely would have required ferreting out and dissecting nuances in language between federal and state consumer-protection laws—there seems nothing particularly complex about bootstrapping a breach-of-contract claim onto a case in which the accuracy of the credit line is already an issue. In addition, forcing NCACU to relitigate the issue of whether Plaintiff still owed a balance to NCACU, and shunting the decisional task to a state forum, remains less conducive to judicial economy and fairness than simply handling NCACU's counter-claim alongside Plaintiff's claims in this one. *See, e.g.*, *James v. Hampton*, 592 F. App'x 449, 462-63 (6th Cir. 2015) ("[T]he appropriate inquiry for the trial court is . . . to balance the 'interests of judicial economy and the avoidance of multiplicity of litigation' against 'needlessly deciding state law issues.' (quoting *Landefeld v. Marion General Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993))).

6

Plaintiff also avers that allowing NCACU's claim would "probably" require him "to join 4Front Credit Union [("4Front")] (with whom Plaintiff refinanced the snowmobile) as a third-party counter-defendant to that claim, which would further multiply the litigation of this case." (Doc. 23 at ID 142). He refines this argument a bit in his Reply brief, where he suggests that he "would need to conduct full discovery of [4Front] regarding breach of contract matters that would go beyond the scope of Plaintiff's FCRA claims." (Doc. 29 at 3). Ultimately, these assertions are sparse and accompanied by no argument or evidence that clarifies 4Front's involvement in the underlying contractual dispute between Plaintiff and NCACU. Indeed, and as NCACU points out, the security agreement Plaintiff attached to his Response does not show where 4Front's money went; it merely shows that the snowmobile was listed as collateral for the financing. (Doc. 26, Ex. 2). Even assuming this joinder and extra discovery necessary, however, I remain unconvinced that it so burdens this litigation as to advise against the assertion of supplemental jurisdiction. This is particularly so where, as here, NCACU's counter-claim involves run-of-the-mill common-law issues, fits snugly into one of NCACU's already-asserted affirmative defenses, and arose out of the same fact-pattern as Plaintiff's claims.

For the reasons stated above, I recommend that Plaintiff's Motion to Dismiss NCACU's Counter-complaint, (Doc. 23), be **DENIED**.

## III. <u>REVIEW</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve

and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 9, 2017               S/ PATRICIA T. MORRIS
                                   Patricia T. Morris
                                   United States Magistrate Judge

## **CERTIFICATION**

      I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.

Date: August 9, 2017                                     By s/Kristen Castaneda
                                                                              Case Manager